February 11, 1992

## IN THE SUPREME COURT OF THE
## COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

ROGER S. GOVENDO, a minor, by ) APPEAL NO. 90-036
KENNETH L. GOVENDO, his ) CIVIL ACTION NO. 90-246
guardian ad litem, )
 )
 Plaintiff/Appellant, )
 )
 vs. ) OPINION
 )
MARIANAS PUBLIC LAND CORPORA- )
TION, AIBIC INTERNATIONAL )
CORPORATION, et al., )
 )
 Defendants/Appellees. )
 )

Argued and Submitted March 27, 1991

Counsel for Plaintiff/Appellant: Kenneth L. Govendo
 P.O. Box 2377
 Saipan, MP 96950

Counsel for Defendant/Appellee
 AIBIC International: Robert J. O'Connor
 P.O. box 1969
 Saipan, MP 96950

Counsel for Defendant/Appellee
 Marianas Public Land Corp.: Brian W. McMahon
 P.O. Box 909
 Saipan, MP 96950

BEFORE: DELA CRUZ, Chief Justice, VILLAGOMEZ and BORJA, Justices.

VILLAGOMEZ, Justice:

 The issue before us is whether the trial court erroneously dismissed plaintiff's complaint under Rule 12(b)(6), Com.R.Civ.P.,

failure to state a claim upon which relief can be granted.[1] The complaint set forth three separate causes of action. Since appellant assigns error to the dismissal of all three causes of action, each of them is separately discussed below.

## BACKGROUND

### A. The Lease Agreement

On March 15, 1988, Marianas Public Land Corporation ("MPLC") leased to AIBIC International Corporation ("AIBIC") Lot No. 004 I 40, containing an area of 40,827 square meters, more or less. The land is situated in San Antonio, Saipan, and is adjacent to the lagoon. The lease term is 25 years, with an option to extend for an additional 15 years, subject to legislative approval. Under the lease agreement, lessee will pay a fixed annual rental plus a percentage of its gross receipts.

MPLC did not conduct any public hearing regarding the proposed lease prior to its execution.

The purpose of the lease agreement is for AIBIC to construct and operate a first-class hotel complex with at least 250 rooms. The lease agreement does not provide that AIBIC may not build any permanent structure within 150 feet of the high water mark. It only provides that AIBIC shall comply with all Commonwealth laws.

MPLC is a public corporation created under Article XI, Section

---

[1] The dismissal of a complaint pursuant to Com.R.Civ.P. 12(b)(6), for failure to state a claim, raises a question of law which we review de novo. Govendo v. Micronesian Garment Mfg., Inc., No. 90-013 (N.M.I. Sept. 10, 1991).

486

4 of the NMI Constitution, entrusted with the management and disposition of public lands.[2]

## B. The Complaint

On March 2, 1990, Roger S. Govendo ("Govendo"), a minor represented by a court appointed guardian ad litem, filed a complaint against MPLC, AIBIC, and the CNMI Government. The complaint asked the court to (1) declare the lease agreement null and void; (2) order AIBIC to vacate the land and remove its fence; (3) require MPLC and the government to use the land only for public purposes; and (4) require public and legislative participation in future decision making processes regarding public land.

Govendo's prayer for relief is based on three causes of action.

In his first cause of action, Govendo alleges that the board's execution of the lease agreement violated their constitutional duty to act under a strict standard of fiduciary care. In support thereof, Govendo alleges:

> a) MPLC leased the largest piece of public land on the western side of Saipan and failed to act as a reasonably prudent trustee in negotiating the agreement.

> b) MPLC leased a large chunk of the remaining public land on the west side of Saipan, knowing that there was little public land left on the lagoon.

_____

[2] Public lands belong collectively to the people of the Commonwealth who are of Northern Marianas descent. Constitution Article XI, Section 1. Section 4(a), provides for a board of directors to direct the affairs of MPLC. Section 4(c), provides that "[t]he directors shall be held to strict standards of fiduciary care."

c) MPLC ignored the fact that there are no outdoor recreational facilities belonging to the people of the Commonwealth who are of Northern Marianas descent and the leased property was the most logical piece of land on the on the [sic] southwest side of Saipan to be used.

d) MPLC did not consider or wrongfully considered the best interests of the public in preserving public land for public uses.

e) MPLC knew that the Director of Natural Resources was a major shareholder of the Lessee and that the Special Assistant for Administration to the Governor at that time was acting as an agent for the Lessee; all this being in violation of Article III, Section 6 and Section 1 of Amendment 40 of the CNMI Constitution. (Conflict of Interest.)

f) The entire decision making process for the lease of this land was done quickly and purposefully to prevent any public hearings or public debate about the lease and, as a result, the decision making was without public input, thereby violating strict fiduciary standards.

Complaint, ¶ 8.

In his second cause of action, Govendo alleges that (a) the leased area under AIBIC's control exceeds five hectares, so as to require legislative approval, which has not been obtained and (b) the lease agreement fails (in violation of law) to prohibit the erection of any permanent structure by lessee within 150 feet of the high water mark.

In his third cause of action, Govendo alleges that the hotel project will result in unsanitary conditions caused by overburdened utilities (e.g. inadequate sewer and water services) which would deprive him of his constitutional right to a clean and healthful public environment.

## C. Motion to Dismiss

MPLC and AIBIC moved to dismiss the complaint for failure to state a claim, pursuant to Rule 12(b)(6). As to the first cause of action, they argued that the complaint alleged mere conclusions without alleging the facts upon which those conclusions were based.

As to the _first_ segment of the second cause of action, they asserted that since the lease agreement provided for a leased area of 40,824 square meters, (less than five hectares) and the lease agreement itself was attached to the complaint (and incorporated therein) the allegation that the leased land exceeded five hectares failed as a matter of law.

As to the _second_ segment of the _second_ cause of action, they asserted that the lease agreement need not expressly prohibit the erection of permanent structures within 150 feet of the high water mark for three reasons. First, silence as to prohibition does not necessarily imply permission to act. Second, the lease agreement expressly does not include the 150 feet of land from the high water mark and there was no reason to contain provisions about that land. Third, the lease agreement separately requires AIBIC to comply with all CNMI laws. That includes laws which prohibit the erection by lessee of permanent structures on the beach.

With respect to the third cause of action, the defendants contended that the allegations contained speculations and opinions as to what plaintiff believes may result once the hotel is constructed and thus do not constitute allegations of fact.

489

## D. Trial Court's Decision

The trial court granted the motion to dismiss the complaint.[3] Govendo timely appealed.

## ANALYSIS

### I. First Cause of Action:

■In considering a motion to dismiss for failure to state a claim upon which relief can be granted, the trial court must take the well-pleaded facts as true and admitted. The defendant must then demonstrate that, even after taking the well pleaded facts as true, the plaintiff still fails to state a claim for relief. Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1963 (1974).

■"While it is true that a trial court must accept all well-pleaded facts of the non-moving party as true, and must also draw reasonable inferences from allegations, there is no duty to strain to find inferences favorable to the non-moving party." In re Adoption of Magofna, No. 90-012, 1 N.Mar. 172 (1990).

As to the first cause of action, the trial court ruled that, based on the well-pleaded facts, even if all the alleged acts (or failure to act) of MPLC are true, such acts (or failure to act) do not constitute a breach of fiduciary care.

■The Constitution requires the MPLC Board of Directors to act

---

[3] As to the defendant, Commonwealth Government, the trial court summarily dismissed it as a party-defendant on the basis that it was not a party to the lease agreement. That part of the decision has not been appealed.

in accordance with strict[4] standards of fiduciary care. We interpret this provision to mean more than the ordinary standard of fiduciary care. The duty of MPLC to act as a fiduciary must be strictly and rigidly observed and complied with. Any deviation from that high standard would violate Article XI, Section 4(c) of the Constitution.

As fiduciaries, members of the board of directors have a duty of loyalty to the people of the Northern Mariana Islands who are of Northern Marianas descent -- the direct beneficiaries. The people, as beneficiaries, have entrusted upon the board the duty to act responsibly, honestly, and in good faith. They are to act solely for and in the best interest of the beneficiaries of the trust, to the exclusion of the interest of all others, including their own personal interests.[5] Romisher v. MPLC, 1 CR 843 (1983).

We analyze the first cause of action applying the above standard.

The first cause of action essentially asserts that, in executing the lease agreement, MPLC breached its constitutional duty to comply with a strict fiduciary care. This cause of action sets forth six specific allegations in support of the general allegation. We analyze each supporting allegation separately.

---

[4] "Strict . . . a: stringent in requirement or control . . . b: severe in discipline . . . 2a: inflexibly maintained or adhered to . . . ." Websters Ninth New Collegiate Dictionary 1167 (1984).

[5] "Fiduciary Duty" means a duty to act for someone else's benefit, while subordinating one's personal interest to that of the other person. It is the highest standard of duty implied by law. Black's Law Dictionary, Sixth Edition 625 (1990).

491

### a. MLPC leased the largest piece of public land on the western side of Saipan and failed to act as a reasonably prudent trustee in negotiating the agreement.

There are two parts to this allegation. First, MPLC leased the largest piece of public land on the western side of Saipan. Second, MPLC failed to act as a reasonably prudent trustee in negotiating the agreement.

The first part raises the question of whether the leasing of the largest piece of public land on the western side of Saipan somehow constitutes a breach of the strict standard of fiduciary care. We fail to see how.

It is not alleged that MPLC cannot lease the largest piece of public land on the western side of Saipan or, that by doing so, it is acting contrary to the best interests of the beneficiaries. To the contrary, the lease agreement provides for rental payments to MPLC as trustee for the benefit of the beneficiaries.

The second part alleges that MPLC failed to act as a "reasonably prudent[6] trustee." This allegation fails to inform the court and MPLC <u>how</u> MPLC failed to act as a reasonably prudent trustee. What did it do, or did not do, that constituted a failure to act prudently? The leasing of the largest piece of public land on the western side of Saipan, without more, does not constitute an

---

[6] "<u>Prudent</u> . . . a: marked by wisdom or judiciousness b: shrewd in the management of practical affairs . . . ." Webster's Ninth New Collegiate Dictionary 949 (1984).

492

imprudent act.[7]

**b. MPLC leased a large chunk of the remaining public land on the west side of Saipan, knowing that there was little public land left on the lagoon.**

We fail to see how the leasing of a large chunk of the remaining public land on the west side of Saipan, with the knowledge that little public land remain there, constitutes a breach of MPLC's strict standard of fiduciary care.

It is not alleged that MPLC has a duty not to lease the last remaining big chunk of land on the west side of Saipan, or that by doing so, it is acting against the interests of the beneficiaries. There has to be more alleged, such as, for example, that it is against established public policy, or that the land is needed for a public purpose, which would be more beneficial to the beneficiaries.

**c. MPLC ignored the fact that there are no outdoor recreational facilities belonging to the people of the Commonwealth who are of Northern Marianas descent and the leased property was the most logical piece of public land on the on the (sic) southwest side of Saipan to be used.**

This allegation can be broken down into three subparts for clarification.

1. There are no outdoor recreational facilities belonging to the people of NMI descent.

2. The leased property is the most logical piece

---

[7] This allegation is similar to an allegation that states, "the defendant committed a crime" without stating what crime has been committed. It fails to inform the defendant and the court what the defendant did.

493

for such recreational facilities on the southwest side of Saipan.

3. In entering into the lease agreement, MPLC ignored the above facts.

The question that arises is whether MPLC's act of ignoring the first two sets of facts, while entering into the lease agreement, constitutes a breach of its strict standard of fiduciary care. We fail to see how.

There is no allegation of any request or demand for recreational facilities on the southwest side of Saipan by the beneficiaries, or that there is any proposal to use the land for such facilities. Lacking such allegations, MPLC has no affirmative duty to consider the existence, or non-existence, of outdoor recreational facilities before leasing large public lands on the southwest side on Saipan which may be suitable for that purpose.

d. MPLC did not consider or wrongfully considered the best interests of the public in preserving public land for public use.

This allegation may be broken down into two parts as follows:

1. It is in the best interest of the public to preserve public land for public use.

2. MPLC did not consider this public interest when it entered into the lease agreement.

Whether public land should be preserved for public use is not a question of fact. It is a matter of opinion. While some people may think so, others may feel that public land may be used for private hotels, private golf-courses, private farms, cattle

494

pastures, and other non-public uses.

█ There is no Commonwealth law which requires that public land be preserved strictly for public use, except those within 150 feet of the high water mark on public beaches and specifically designated preservation/recreational lands, such as Managaha. To the contrary, Article XI, Section 5(d) and (g) of the Constitution expressly provides that MPLC may transfer an interest in public land for _commercial_ use and receive compensation therefor.

█ MPLC's decision not to consider this alleged public interest, even if true, did not constitute a breach of strict standard of fiduciary care.

e. MPLC knew that the Director of Natural Resources was a major shareholder of the Lessee and that the Special Assistant for Administration to the Governor at that time was acting as an agent for the Lessee; all this being in violation of Article III, Section 6 and Section 1 of Amendment 40 of the CNMI Constitution. (conflict of interest)

█ This allegation raises the question of whether MLPC's execution of the lease agreement, with the knowledge that the director of Natural Resources was a shareholder of the lessee and that the Governor's special assistant acted as agent for the lessee, constitutes a breach of strict standard of fiduciary care. We fail to see how.

First, Article III, Section 6 and Section 1 of Amendment 40 of the Constitution do not apply to the facts of this case.[8] Second,

---

[8] NMI Constitution Article III. _Executive Branch_.

█

there is no allegation that either the director or the special assistant had any connection with or influence over MPLC (which is not a part of the executive branch) that would cause any conflict of interest. See Romisher v. MPLC, 1 CR 843 (1983). Nor is there any allegation that either of them had actually used his position to unlawfully influence MPLC.

Mere knowledge of such fact by MPLC, even if true, is insufficient to constitute a breach of fiduciary care.

f. The entire decision making process for the lease of this land was done quickly and purposefully to prevent any public hearings or public debate about the lease and, as a result, the decision making was without public input,

 . . .

Section 6. Other Government Employment. The governor or lieutenant governor may not serve in another Commonwealth position or receive compensation for performance of official duties or from any governmental body except as provided by Section 5.

Amendment 40, NMI Constitution.

Section 1. Code of Ethics. The legislature shall enact a comprehensive Code of Ethics which shall apply to appointed and elected officers and employees of the Commonwealth and its political subdivisions, including members of boards, commissions, and other instrumentalities. The Code of Ethics shall include a definition of proper conduct for members of the legislature with conflicts of interest and a definition of the proper scope of debate in the legislature, shall require disclosure of financial or personal interests sufficient to prevent conflicts of interest in the performance of official duties, shall define the offense or corrupt solicitation of public officials, and shall provide for punishment of offenses by fine and imprisonment.

496

**thereby violating strict fiduciary standards.**

We fail to see how MPLC's decision not to conduct a public hearing on the proposed lease agreement, even if true, violated fiduciary care.

It is not alleged that MPLC has a fiduciary duty to hold a public hearing before entering into the lease agreement. There is also no allegation that a public hearing was requested by any person, or that a public hearing would have prevented specific acts or agreements that would be contrary to the best interests of the beneficiaries.

## II. Second Cause of Action:

The second cause of action contains two distinct allegations of fact. We analyze each part separately.

a. **The area leased and under control of the Lessee is more than five hectares of land which will be used for commercial purposes; thereby requiring the approval of the Legislature in joint session, which was not done.**

The question here is, whether these are well-pleaded facts, in light of the provision of Article 1 of the Lease Agreement which states:

> The Corporation hereby leases to the Lessee . . . Lot No. 004 I 40, containing an area of 40,827 square meters, more or less, as shown on Survey Plat No. 004 I 04, registered in the Commonwealth Recorder (File No. 88-789) on March 14, 1988.

We do not think so.

The lease agreement has been executed and is binding on both parties. Under the lease, AIBIC is leasing only 40,827 square

meters of land.[9]

Govendo did not allege that "although the lease agreement grants 40,827 square meters, AIBIC is actually occupying and possessing more than 50,000 square meters." The complaint only alleges that "[t]he area leased . . . is more than five hectares . . . ." Complaint at 4. (Emphasis added) Nor has Govendo alleged that MPLC acquiesces to the possession of more than 50,000 square meters of land.

b. [T]he lease does not prohibit the erection of any permanent structure within one hundred fifty feet of the high water mark of a sandy beach as is required by law.

Govendo argues that:

[B]y not stating it in the lease, MPLC is consenting to the creation of these structures which may be a Constitutional [sic] violation. It is certainly a breach of fiduciary duty since the public is entitled to a beach area broader than an area from the high water mark to the water itself.

Appellant's Opening Brief at 20.

The fact that the lease agreement does not expressly prohibit the erection of permanent structure within 150 feet of the high water mark does not, by itself, constitute a violation of Article XI, Section 5(e) of the Constitution, i.e. MPLC's strict standard of fiduciary care.

Article XI, Section 5(e) of the Constitution as originally drafted and ratified stated:

_____

[9]This is not to say that if AIBIC does occupy and take over possession of more than 50,000 square meters of land, Govendo would still not have a cause of action. However, that has not been alleged.

498

> The Corporation may not transfer an interest in public lands located within one hundred fifty feet of the high water mark of a sandy beach.

In 1985, this provision was amended and ratified as follows:

> The Corporation may not transfer an interest, <u>and may prohibit the erection of any permanent structure</u>, in public lands located within one hundred fifty feet of high water mark of a sandy beach, <u>except that the corporation may authorize construction of facilities for public purposes</u>.

Constitution, Article XI, Section 5(e) as amended. (The underlined language was added by the amendment).

In the original provision, MPLC was only prohibited from transferring any interest within 150 feet of the high water mark. In the amended version, MLPC is authorized to do two things. First, prohibit the erection of permanent structure within 150 feet of the high water mark. Second, authorize construction of facilities therein but only for public purposes. Under both the original and the second version, MPLC is prohibited from transferring any interest within 150 feet of the high water mark.[10]

It is not clear from the lease agreement whether it encompasses any land within 150 feet of the high water mark. If it does, then the lease agreement would indeed be in violation of the Constitution. Appellees have indicated in their brief that the lease agreement does not cover any land within 150 feet of the high

---

[10] "It is intended that the corporation maintain the sandy beaches for use by the people of the Commonwealth. This includes maintaining sufficient public access to these beaches . . . ." "[N]o other government agency or the legislature may transfer the sandy beaches protected by this subsection." Constitutional Analysis, 157 (1976).

water mark. Govendo has not alleged that the lease agreement covers any part of that protected land.

AIBIC has no legal authority to build any structure within 150 feet of the high water mark adjacent to the leased premises,[11] even if the lease agreement does not expressly prohibit it. If AIBIC were to build any such structure, it would be in violation of Article XI, Section 5(e), of the Constitution. Such violation may be prohibited by MPLC under Article XI, section 5(e), or any CNMI citizen of Northern Marianas descent could bring an action against AIBIC to enjoin such violation and seek damages.[12]

III. **Third Cause of Action.**

Govendo alleges that if AIBIC develops a hotel on the leased property, his constitutional right to a clean and healthful public environment[13] would be violated because (1) the beach area would be used almost exclusively by tourists, (2) the reef and lagoon would be destroyed in that area, (3) Saipan would become more

---

[11] Except for MPLC's power to authorize the construction of facilities for public purposes, no statute, regulation or agency action may authorize the erection of any structure within 150 feet of the high water mark of any public beach.

[12] We interpret Article XI, section 5(e) to be self-executing.

[13] Constitution, Article I, Section 9, as amended:

Each person has the right to a clean and healthful public environment in all areas, including the land, air, and water. Harmful and unnecessary noise pollution, and the storage of nuclear or radioactive material and the dumping or storage of any type of nuclear waste within the surface or submerged lands and waters of the Northern Mariana Islands, are prohibited except as provided by law.

500

crowded, (4) overburdened utilities such as sewer and water would cause unsanitary conditions, and (5) the beach area he needs for recreation purposes would be removed.

It is unclear whether the legal theory behind this cause of action is that MPLC violated Govendo's constitutional right[14] by leasing public land upon which a hotel would be built, which would result in a harmful environmental impact, or whether the theory behind this cause of action is that AIBIC has violated Govendo's constitutional right[15] by planning to build the hotel. However, it is our opinion that either theory is sustainable.

The trial court has ruled (and appellees argue on appeal) that these allegations are speculative and do not constitute well-pleaded facts or state a claim upon which relief can be granted. We disagree.

It is clear that Govendo and all persons affected in the Commonwealth have a constitutional right to a clean and healthful public environment within the CNMI. Substances, objects or harmful and unnecessary noise pollution "may not be added to or cast upon the air or water by government or private activities . . . that adversely affect the cleanliness of the air, land or water." Constitutional Analysis, 24 (1986) (emphasis added). If this right is violated by either a private person, private entity, or a government agency, then a private person or the government, its

---

[14] This would constitute a government action that violates an individual's rights.

[15] This would constitute a private action which violates an individual's rights.

501

proper agencies and instrumentalities, may bring an action to enjoin such violation and recover damages for injuries sustained.[16]

▮In addition, the court may enjoin a proposed government or private activity which, if allowed, would adversely and unconstitutionally affect the cleanliness of the air, land, or water.[17] Whether the construction of a large hotel, as proposed in the lease agreement, would in fact cause such a result is not the issue before us. The issue before us is whether the allegations in the complaint constitute well-pleaded facts which state a claim upon which relief can be granted. We think that this cause of action does.

It is alleged that if the hotel is built, the overburdened utilities would cause unsanitary conditions which would destroy the reef and lagoon area. The Constitution clearly prohibits activities that would have such adverse environmental results. If Govendo were to wait and see, it may become too late. See 13A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure, § 3532, at 112-144 (2d ed. 1984). He should be given the opportunity to prove his allegations. Whether he proves those allegations or not is not crucial to a Rule 12(b)(6) motion. We hold that the trial court erred and we reverse the dismissal of this cause of

---

[16] We interpret Article I, section 9 of the Constitution to be self-executing.

[17] We note that Govendo's prayers do not clearly seek an injunction against the activities that would result in the violation of Article I, section 9 of the Constitution. Nevertheless, he should be allowed to amend his complaint to request the proper remedy. See N. 18, infra.

action.

## CONCLUSION

The dismissal of the complaint by the trial court, as to the first two causes of action, is hereby **AFFIRMED**. We **REVERSE** as to the dismissal of the third cause of action and **REMAND** the case for trial. As to all three causes of action, the trial court shall grant Govendo, if he requests, leave to amend his complaint in order to comply with the requirement of well-pleaded facts for the first two causes of action,[18] and to request the proper remedy as to the third cause of action.[19]

Dated this ___11th___ day of ___February___, 1992.

_____
JOSE S. DELA CRUZ, Chief Justice

_____
RAMON G. VILLAGOMEZ, Associate Justice

---

[18] "A dismissal under Rule 12(b)(6) is not final or on the merits and the court normally will give plaintiff leave to file an amended complaint." In re the Adoption of Magfona, supra.

"Leave to file an amended complaint shall be freely given when justice so requires." Com.R.Civ.P. 15(a); In re Adoption of Magofna, supra. "The liberal allowance of amendments of pleadings is a recognition that controversies should be decided on the merits whenever practicable." 27 Fed Proc L Ed § 62:258 (1984) (analysis of Fed.R.Civ.P. 15(a)).

[19] Appellee's (AIBIC) argument on appeal that it is a bona fide purchaser of the leasehold interest is premature for our consideration at this time.

503

BORJA, J., dissenting in part:

I join with my brethren in the decision regarding appellant's second and third causes of action. I respectfully dissent from the majority decision as to the first cause of action.

The first cause of action alleges a breach by the Marianas Public Land Corporation (hereafter MPLC) of its constitutionally required strict standards of fiduciary care when it executed the lease agreement with appellee, AIBIC International Corporation. Appellant listed five factors as the reasons for the breach.

It is my opinion that the first cause of action is sufficient to withstand a Rule 12(b)(6), Com.R.Civ.P., motion. While it may not be the best artfully drafted pleading, it suffices for purposes of Rule 12(b)(6).

MPLC was constitutionally established to "direct the affairs of the corporation for the benefit of the people of the Commonwealth who are of Northern Marianas descent." Constitution of the Northern Mariana Islands, reprinted in CMC at B-301, B-330.

Article XI, section 4(c) of the Constitution, states, in pertinent part, that, "The directors shall be held to strict standards of fiduciary care." Id. at B-331.

Section 5, of Article XI lists certain fundamental policies in the performance of its responsibilities. Other than those fundamental policies specifically stated, the Article is silent as to what the strict standards of fiduciary care are.

In addition to the general definition of "fiduciary duty" stated by the majority (see page 7; supra), the case cited by the

504

majority of <u>Romisher v. Marianas Public Land Corporation</u>, <u>supra</u>, states the following:

> The entire theory of a fiduciary relationship . . . is to accord the beneficiary the undivided loyalty of the trustee or public official. As such, the members of the board of directors of MPLC must perform their duties honestly, faithfully. . .

<u>Id</u>. at 851. I am aware of only five other court cases that have dealt with Article XI. In <u>Romisher v. Marianas Public Land Corporation</u>, 1 CR 873 (C.T.C. 1983), the court dealt with the authority of MPLC to acquire private lands. In <u>Marianas Public Land Trust v. Marianas Public Land Corporation</u>, 1 CR 968 (C.T.C. 1984), and in <u>Marianas Public Land Trust v. Marianas Public Land Corporation</u>, 1 CR 976 (C.T.C. 1984) the court addressed the issue of what were reasonable expenses of administration. In <u>Lizama v. Rios</u>, 2 CR 568 (D.N.M.I. 1986), the court dealt with the standing of a beneficiary. And in <u>Apatang v. Marianas Public Land Corporation</u>, 3 CR 935 (N.M.I. Super. Ct. 1989), the issue was land exchanges.

I am not aware of any Commonwealth court case further developing or defining the constitutional words "strict standards of fiduciary care" with regard to MPLC. As such, this is an area of the law that I would classify as being novel. Courts should be reluctant to dismiss a case under Rule 12(b)(6) when the issue is new and developing. As stated in 5A C. Wright & A. Miller <u>Federal Practice and Procedure</u>: <u>Civil</u> 2d § 1357 (1990):

> The court should be especially reluctant to dismiss on the basis of the pleadings when the

505

asserted theory of liability is novel or extreme, since it is important that new legal theories be explored and assayed in the light of actual facts rather than a pleader's suppositions.

Rule 12(b)(6) must be read together with Rule 8(a)(2). Before a Rule 12(b)(6) motion is granted, a court must first look to Rule 8 to see if it has been complied with. If there is compliance, then the Rule 12(b)(6) motion should not be granted.

Rule 8(a)(2) states that:

A pleading which sets forth a claim for relief . . . shall contain
. . .
a short and plain statement of the claim showing that the pleader is entitled to relief
. . . .

In In re Adoption of Magofna, No. 90-012, 1 N.Mar.I. 172 (Dec. 5, 1990), we cited with approval 5 C. Wright & A. Miller, Federal Practice and Procedure: Civil 2d § 1216 (1990) for the proposition that:

[T]he complaint . . . need not state with precision all elements that give rise to a legal basis for recovery as long as fair notice of the nature of the action is provided.

The Magofna case established the test to be used in determining whether a pleading withstands a Rule 12(b)(6) motion. The test is whether a pleading contains "direct allegations on every material point necessary to sustain a recovery on any legal theory," or "allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." In re Adoption of Magofna, supra at 4.

It is my opinion that the appellant's first cause of action

506

meets either test, especially in view of the novelty of this theory of liability.

The Constitution requires MPLC to direct the affairs of the corporation for the benefit of the people of Northern Marianas descent. It further states that the directors are to be held to strict standards of fiduciary care. The Romisher case cited by the majority states that the beneficiaries of a fiduciary relationship require the "undivided loyalty" of a trustee, and, as such, the trustee must act "honestly [and] faithfully."

Other than what the Constitution expressly states, and what the Romisher case declares, there is no other guidance as to what is a "cause of action" for a breach of the strict fiduciary duty mandated by Article XI of our Constitution. A beneficiary who wishes to challenge an action of MPLC on the basis of a breach of the strict fiduciary duty should be given every opportunity to prove the allegations of his or her complaint. The courts should not dismiss the complaint pursuant to Rule 12(b)(6), until and unless the complaint fails both alternative tests, as stated in In re the Adoption of Magofna, supra, after a full and careful scrutiny. To do so would leave beneficiaries without an effective and needed tool to challenge actions of trustees.

In Paragraph 8 of the complaint, the appellant alleges that there has been a breach of the required fiduciary care and listed six specific allegations as to the reasons that there is a breach. The first alleged that MPLC "failed to act as a reasonably prudent trustee." The second alleges that MPLC leased a large piece of

507

property "knowing that there was little public land left on the lagoon." The third stated that MPLC "ignored the fact that there are no outdoor recreational facilities . . . and the leased property was the most logical piece." The fourth expressly alleged that MPLC "did not consider or wrongfully considered the best interests of the public in preserving public land for public uses." The fifth alleged a conflict of interest of MPLC. And the sixth alleged that, "The entire decision making process for the lease of this land was done quickly and purposefully to prevent any public hearings or public debate about the lease." All of these allegations directly or implicitly say that MPLC acted dishonestly, unfaithfully, and not for the best interest of the beneficiary.

It is my opinion that the allegations satisfy the requirement that the complaint contain "direct allegations on every material point necessary to sustain a recovery" for a breach of the fiduciary duty already developed by the Romisher case. Even if, as the majority conclude, that there are no direct allegations to sustain a recovery, the complaint contains "allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial."

Jesus C. Borja
Justice