**E-FILED**
**CNMI SUPREME COURT**
E-filed: Mar 13 2026 01:35PM
Clerk Review: Mar 13 2026 01:35PM
Filing ID: 78716320
Case No.: 2024-SCC-0011-CIV
Judy Aldan





IN THE

# Supreme Court

OF THE

# Commonwealth of the Northern Mariana Islands

---

**ANAKS OCEAN VIEW HILL SAIPAN HOMEOWNERS' ASSOCIATION, LTD.,**
*Petitioner-Appellant*,

**v.**

**PERRY INOS JR., ET AL.,**
*Respondent-Appellees*,

**AND**

**ATKINS KROLL SAIPAN, INC.,**
*Applicant-Appellee*.

**Supreme Court No. 2024-SCC-0011-CIV**

---

**SLIP OPINION**

**Cite as: 2026 MP 1**

Decided March 13, 2026

---

CHIEF JUSTICE ALEXANDRO C. CASTRO
JUSTICE PRO TEMPORE ROBERT J. TORRES, JR.
JUSTICE PRO TEMPORE F. PHILIP CARBULLIDO

---

Superior Court No. 22-0103-CV
Judge Pro Tempore David A. Wiseman, Presiding

---

C.J. CASTRO:

¶ 1    ANAKS Ocean View Hill Saipan Homeowners' Association, Ltd. ("ANAKS") appeals the Superior Court's judgment affirming the Zoning Board's issuance of a conditional use permit to Atkins Kroll Saipan, Inc. ANAKS contends that the Board violated notice and hearing requirements under the Saipan Zoning Law of 2013 ("SZL") and the Commonwealth Administrative Procedure Act ("APA") and that the Board's approval was arbitrary and capricious, ultra vires, and unconstitutional. We affirm the Superior Court's judgment.

## I. FACTS AND PROCEDURAL HISTORY

¶ 2    In December 2021, Atkins Kroll Saipan, Inc. ("Atkins Kroll") applied for a conditional use permit to construct and operate a car dealership with a twenty-seven–bay vehicle repair facility in Puerto Rico, Saipan. The property is within the Mixed Commercial District, where vehicle sales are permitted as of right, but general vehicle repair requires conditional approval. The Ocean View Hill residential community, represented by ANAKS, borders the site.

¶ 3    The Zoning Administrator certified the application as complete under SZL § 1308(b)(2) and issued a memorandum assessing the proposal and recommending conditions for the Board's consideration. Before the initial hearing, Atkins Kroll submitted narrative materials, site plans, and supporting documentation describing the proposed development.

¶ 4    The Board first considered the application at a publicly noticed meeting on January 19, 2022. Notice of the hearing was published in the *Saipan Tribune* before the meeting. Residents of the Ocean View Hill community appeared and raised concerns regarding traffic, noise, and compatibility with the surrounding neighborhood. ANAKS requested more time to evaluate the proposal and submit further information. The Board continued the matter to allow Atkins Kroll to provide supplemental materials responsive to the concerns raised.

¶ 5    On February 23, 2022, Atkins Kroll submitted supplemental materials, including traffic and drainage information. Notice of the continued hearing was published in the *Saipan Tribune*. The Board reconvened on March 9, 2022. During deliberations, Board members referenced potential community benefits of the project while evaluating site suitability. ANAKS, represented by counsel, appeared and asked for more time and a formal contested case hearing under the APA, 1 CMC §§ 9108–9110. The Board continued the matter to March 18, 2022.

¶ 6    At the March 18, 2022 meeting—held nine days after the March 9 continuation—ANAKS submitted written objections, including a memorandum of law and a technical memorandum prepared by a professional engineer critiquing parts of the application. Among other concerns, ANAKS argued that the record lacked sufficient technical information regarding potential noise and environmental impacts on the adjacent residential community. The materials before the Board did not include a quantitative noise study or predictive modeling of sound impacts.

¶ 7      During deliberations, several Board members stated that environmental matters—including noise—would be reviewed by other regulatory agencies, including the Bureau of Environmental and Coastal Quality, as part of the permitting process. The Board declined to conduct a formal APA adjudicatory hearing and proceeded under the public hearing procedures prescribed by the SZL. Nothing in the record shows the Board believed it lacked authority to evaluate compatibility under SZL § 702 or that it delegated that statutory determination to another agency.

¶ 8      Following additional public comment and deliberation, the Board unanimously approved the conditional use permit subject to nineteen conditions addressing matters such as drainage, landscaping, site design, and operational requirements. The Board voted to approve the permit on April 13, 2022, and issued a written order on April 21, 2022.

¶ 9      On May 13, 2022, ANAKS petitioned the Superior Court for judicial review under the SZL and the APA, 1 CMC §§ 9101–9115. ANAKS asserted that the Board did not provide adequate notice, denied due process, relied on an unqualified Zoning Administrator, and acted arbitrarily and capriciously in approving the permit.

¶ 10     The Superior Court rejected each claim. It held that ANAKS received adequate notice and a meaningful opportunity to be heard; that the proceedings satisfied due process; that any alleged deficiency in the Zoning Administrator's qualifications did not affect the Board's independent authority; and that the Board acted within its discretion under SZL § 702 by approving the permit subject to conditions designed to mitigate identified impacts. The court also held that the Board's decision reflected a reasoned application of the zoning criteria rather than arbitrary or capricious decision-making.

¶ 11     ANAKS timely appealed, renewing its procedural and statutory challenges and advancing a constitutional claim under Article I, Section 9 of the NMI Constitution.

## II. JURISDICTION

¶ 12     We have jurisdiction over appeals of trial court decisions reviewing administrative matters. 1 CMC § 9113; *Premier Ins. Co. v. Commonwealth Dep't of Lab.*, 2012 MP 16 ¶ 6.

## III. STANDARD OF REVIEW

¶ 13     Judicial review of agency action under the Commonwealth Administrative Procedure Act ("APA") is limited. A reviewing court may set aside agency action only if it is:

> (i) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
> (ii) contrary to constitutional right, power, privilege, or immunity;
> (iii) in excess of statutory jurisdiction, authority or limitations, or short of statutory rights;

(iv) without observance of procedure required by law;

(v) unsupported by substantial evidence in a case subject to 1 CMC §§ 9108 and 9109 or otherwise reviewed on the record of an agency hearing provided by statute; or

(vi) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

1 CMC § 9112(f)(2).

¶ 14    ANAKS invokes four of these grounds, asserting that the Board's approval of the permit was arbitrary and capricious, contrary to constitutional rights, taken in excess of statutory authority, and without observance of required procedures.

¶ 15    Arbitrary-and-capricious review is deferential. We examine whether the agency's decision was reasonable and supported by information sufficient to justify the result when it was made. *In re Blankenship*, 3 NMI 209, 217 (1992). We do not substitute our judgment for that of the agency. Claims that the agency violated statutory, procedural, or constitutional requirements present questions of law, which we review de novo. *Premier Ins. Co.*, 2012 MP 16 ¶ 7.

### IV. DISCUSSION

¶ 16    ANAKS raises both procedural and substantive challenges to the Board's approval of the permit. We begin with arguments that concern the legality of the proceedings themselves, ANAKS' claims that the Board exceeded its statutory authority, and violated procedural requirements as well as Article I, Section 9 of the NMI Constitution. We then consider whether the Board's decision was arbitrary or capricious under 1 CMC section 9112(f)(2)(i).

*A. The Board Acted Within Its Statutory Authority*

¶ 17    Section 9112(f)(2)(iii) of the APA concerns the scope of the agency's legislatively conferred power. It permits a court to set aside agency action only if the agency acted in excess of statutory jurisdiction or authority. ANAKS argues that the Board's approval must be vacated because the Zoning Administrator did not satisfy the qualifications in 2 CMC § 7222(a). The question is whether the Legislature conditioned the Zoning Board's authority to issue conditional use permits on the qualifications of the Zoning Administrator.

¶ 18    The SZL does not impose this condition. It expressly vests the Zoning Board with authority to review and decide conditional use permit applications. SZL § 1308. Nothing in the statute conditions the Board's authority on the credentials of staff who help the Board to carry out its work.

¶ 19    Section 7222(a) sets the baseline qualifications for the position of Zoning Administrator. It requires that the Administrator have at least a bachelor's degree—preferably a graduate degree—in planning or a related discipline, along with five years of progressively responsible experience in land use planning, comprehensive planning, or land use administration. 2 N. Mar. I. Code § 7222(a). This provision regulates staffing. It does not define or limit the Board's adjudicatory power. Its text neither conditions the validity of Board action on compliance with staff standards nor transfers decision-making authority from the

Board to the Administrator. The Board alone issues conditional use permits; the Administrator's role is administrative and advisory.

¶ 20    ANAKS next contends that the Administrator's certification of completeness under SZL § 1308(b)(2) is a statutory prerequisite to Board action and that an unqualified Administrator could not lawfully perform that gatekeeping function. But the statute does not create a jurisdictional condition out of an internal hiring procedure. Certification of completeness is an administrative step in processing an application. It does not create or withdraw the Board's statutory power to hear and decide conditional use applications, which arises directly from SZL §§ 702 and 1308.

¶ 21    ANAKS also asserts that the application itself was incomplete and that the Administrator's memorandum was deficient. Those assertions flow from the same premise—that an allegedly unqualified Administrator improperly screened the application. But even if the Administrator's review were flawed, that would concern the quality of the administrative process, not the existence of the Board's statutory authority. Section 9112(f)(2)(iii) addresses whether the Board had the power to act, not whether its staff performed their duties perfectly. Alleged defects in screening or completeness implicate substantial-evidence review or arbitrary-and-capricious review; they do not establish that the Board lacked jurisdiction to conduct hearings and issue a decision.

¶ 22    Under ANAKS's theory, any asserted defect in agency hiring or internal workflow would become a jurisdictional bar to agency action. The APA does not contemplate this. Jurisdiction turns on statutory power, not on the qualifications of administrative staff who help the decision-maker. ANAKS has not shown that the Board acted in excess of its statutory authority. Section 9112(f)(2)(iii) provides no basis for setting aside the permit.

### B. The Board Afforded Notice and a Meaningful Opportunity to Be Heard

¶ 23    ANAKS argues that the conditional use permit must be set aside because the Zoning Board (1) failed to provide "actual" notice of the March 9, 2022 continuation, (2) provided only nine days' notice of the March 18, 2022 special meeting, and (3) failed to conduct a contested-case hearing under 1 CMC §§ 9108–9110. We address each argument in turn.

#### 1. The SZL Does Not Require Individualized Notice

¶ 24    Section 1404(a) of the SZL requires notice to be given in a manner "calculated to provide actual, cost-effective notice," and expressly permits methods such as newspaper publication, posting, electronic notice, or personal delivery. SZL § 1404(a). The statute does not require individualized service on every interested person identified in section 1404(c). Rather, it authorizes the Zoning Board to determine, by regulation, what form of notice is appropriate for each type of proceeding. *Id.*

¶ 25    Under that delegation, the Board adopted regulations providing that its meetings "shall be publicly noticed as required by law," and that "[o]rdinarily such notice shall be by publication in at least one newspaper of local circulation

at least one time each week for two weeks prior to a meeting." NMIAC § 165-30.1-101(c). The record reflects that the Board provided notice through newspaper publication consistent with this regulation.

¶ 26    Because section 1404 assigns the mechanics of notice to the Board and the Board followed its governing regulation, the statutory requirement was satisfied. The Constitution requires no more. Due process does not demand perfect notice; it requires notice reasonably calculated, under the circumstances, to inform interested parties and allow them to object. The phrase in section 1404(a) requiring notice "calculated to provide actual, cost-effective notice" reflects that same objective. The phrase does not require the Board to achieve actual notice in every instance; it requires the Board to choose methods reasonably designed to reach interested persons.

¶ 27    In *Premier Ins. Co. v. Commonwealth Dep't of Lab.,* 2012 MP 16, this Court applied those principles in an enforcement proceeding adjudicating individual liability. *Id.* ¶ 2. There the agency knew the party's address, had provided individualized notice, allowed three years to lapse, and then relied only on publication. *Id.* The party did not appear and did not learn of the hearing until after a binding decision was entered. Under those circumstances, publication did not provide notice, and the Court concluded the agency had not exercised reasonable diligence before resorting to publication. *Id.* ¶ 12.

¶ 28    This case is materially different. The proceeding here was a public zoning hearing governed by a statute that expressly authorizes notice by publication. It did not involve a coercive enforcement action against ANAKS or the adjudication of individual liability. Most importantly, the Board's notice process functioned as intended: ANAKS received notice, appeared, requested more time, submitted written and expert materials, and actively participated in the hearings. Unlike in *Premier*, where the agency's minimal efforts did not inform the affected party, the record here reflects a participatory zoning process that successfully notified the interested community. On these facts, the Board exercised the diligence contemplated by SZL § 1404(a). The SZL requires reasonable, statutorily authorized notice procedures—not the use of every additional method that might have been available in hindsight—and neither the statute nor due process required individualized notice in addition to the authorized public notice methods.

*2. Notice of the March 18 Meeting Did Not Violate the SZL*

¶ 29    ANAKS next argues that the March 18 hearing was unlawful because the Board gave notice nine days in advance rather than fourteen days as referenced in certain subsections of SZL § 1404(d)–(h). That argument reads the statute more rigidly than its text permits.

¶ 30    Section 1404 ties specific timing requirements to particular methods of notice; it does not establish a single, uniform notice period applicable in all circumstances. The fourteen-day period applies when notice is mailed, SZL § 1404(d), and when notice is given through posting of a physical sign, SZL

§ 1404(h). The statute does not extend that requirement to every form of notice, nor does it address continuances of already-noticed hearings.

¶ 31 The March 18 proceeding was a continuation of a duly noticed public hearing at which ANAKS appeared and asked for more time. Nothing in the SZL requires the Board to restart the statutory notice period for a continued hearing. Reading section 1404 to impose a required fourteen-day period for every special meeting would treat routine continuances as new proceedings and conflict with the statute's structure, precluding continuances within two weeks of a noticed hearing. Because section 1404 does not mandate fourteen days' notice under these circumstances, the Board's notice of the continued hearing did not violate the statute. We hold that section 1404 did not require fourteen days' notice for the March 18 continuation.

### 3. The Conditional Use Permit Hearing Was Not Subject to the APA's Formal Adjudication Procedures

¶ 32 Section 9108 governs "adjudications"—proceedings in which an agency resolves disputed claims of right or imposes sanctions. It states that formal procedures apply to such adjudications, but excludes proceedings "respecting the grant or renewal of a license." 1 CMC § 9108(a). It adds that some license proceedings may themselves be adjudications when another law requires them to be preceded by notice and an opportunity to be heard. *Id.*

¶ 33 That structure does not mean that every noticed licensing decision automatically becomes a formal adjudication. A hearing on a license is an "adjudication" only when the Legislature has designed it that way. The reference in section 9108(a) to license proceedings "required by law to be preceded by notice and opportunity to be heard" identifies the subset of license cases that fall into the adjudication category; it does not convert all noticed license determinations into formal APA hearings. *Id.*

¶ 34 The structure of the APA confirms this understanding. Section 9109 describes hearings with features typical of trial-like adjudication: sworn testimony, compulsory process, cross-examination, and a defined evidentiary record. Those protections are designed for proceedings in which an agency resolves disputed claims of right or imposes sanctions. *See J.G. Sablan Rock Quarry, Inc. v. Dep't of Public Lands*, 2012 MP 2 ¶¶ 29–30 (explaining that trial-type procedures under the APA are required in proceedings adjudicating liability or imposing sanctions). The APA does not transform every public licensing decision preceded by notice into a formal adjudication.

¶ 35 A conditional use permit hearing under the SZL is different. Section 1308(c) requires the Board to hold a public hearing on a completed application and to afford interested persons an opportunity to be heard. It structures the proceeding as a public forum for community participation, not as a formal contest between defined parties. The statute speaks in terms of public notice and public hearing— not sworn testimony, subpoenas, or cross-examination.

¶ 36     The SZL confirms this distinction elsewhere. When the Legislature intended to require formal adjudicative procedures—such as in enforcement proceedings that may result in penalties—it said so expressly. *See* SZL §§ 1402, 1409. It did not use similar language in section 1308(c). That omission reflects a legislative choice to structure conditional use permit hearings as participatory public proceedings rather than adjudications governed by sections 9108 through 9110.

¶ 37     Other jurisdictions sometimes treat parcel-specific zoning decisions as adjudications, depending on how their statutes are written. *See, e.g., Capitol Hill Restoration Soc'y v. Zoning Comm'n*, 287 A.2d 101 (D.C. 1972). But whether a zoning hearing qualifies as a formal adjudication depends on legislative design. Under the SZL, a conditional use permit hearing is a prospective licensing determination structured as a public forum. It is not an adjudication within the meaning of section 9108.

¶ 38     Because section 9108 does not apply, the formal adjudication procedures set out in sections 9109 and 9110 were not required. The Board followed the procedure the Legislature prescribed: it provided public notice under section 1404, conducted multiple hearings, allowed ANAKS to present comments and written materials, granted a continuance at ANAKS's request, and issued a written decision explaining its approval subject to conditions. ANAKS's procedural challenge therefore fails as a matter of law. Separate review under the substantial-evidence standard is also not warranted, as that standard applies only to proceedings governed by sections 9108 through 9110.

*C. The Board Did Not Violate the Right to a Clean and Healthful Environment*

¶ 39     ANAKS contends that the Zoning Board's approval of the conditional use permit violates Article I, Section 9 of the NMI Constitution, which guarantees a right to a clean and healthful public environment and prohibits harmful and unnecessary noise pollution. ANAKS argues that the Board's approval constitutes affirmative state action authorizing environmental harm, and that the Board was constitutionally required to deny the permit or impose additional protections.

¶ 40     Article I, Section 9 is self-executing, but it is not boundless. *Govendo v. Marianas Pub. Land Corp.*, 2 N. Mar. I. 482, 502 n.16 (1992). It constrains governmental action that itself authorizes, facilitates, or directly creates a substantial and imminent risk of environmental harm rising to a constitutional level. *See Atalig v. Mobil Oil Mariana Islands, Inc.*, 2013 MP 11 ¶¶ 25–26 (establishing state actor requirements to bring a cause of action under Article I, section 9 of the NMI Constitution). It does not render every land-use decision a constitutional issue.

¶ 41     The record does not establish that the Board's approval will result in a substantial and imminent risk of harmful and unnecessary noise pollution or other environmental harm. ANAKS's arguments instead depend on the possibility of

future impacts should mitigation prove inadequate or enforcement later fail. Such contingent concerns are insufficient to establish a violation of Article I, Section 9.

¶ 42     We reject ANAKS's position because it would effectively convert Article I, Section 9 into a constitutional veto over discretionary land-use decisions whenever residents dispute the adequacy of mitigation measures. The Constitution does not compel that result.

### *D. The Decision Was Not Arbitrary or Capricious*

¶ 43     Under 1 CMC § 9112(f)(2)(i), agency action may be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." That standard is deferential by design. A reviewing court does not reweigh the evidence, substitute its judgment for that of the agency, or determine whether it would have reached a different result. *Pac. Sec. Alarm, Inc. v. Commonwealth Ports Auth.*, 2006 MP 17 ¶ 14. The question is whether the agency examined the relevant considerations and offered a rational explanation for its decision.

¶ 44     ANAKS argues that the Board acted arbitrarily and capriciously by approving the permit without more studies, by deferring certain issues to other agencies, and by relying on non-statutory considerations. The record does not support these claims.

¶ 45     First, the SZL does not require the Zoning Board to conduct a specific study because it was asked to do so. The Board's task under SZL §§ 702 and 1308 is to determine whether a proposed use may be made compatible with surrounding uses through siting and conditions. The Board had before it traffic and drainage studies submitted by the applicant, as well as written objections, expert materials, and proposed conditions submitted by ANAKS. That ANAKS or its consultants believe that the Board should have conducted additional studies does not render the Board's decision arbitrary. An agency's choice among reasonable evidentiary approaches—particularly where the decision involves predictive judgments about future impacts—is entitled to deference. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 51–52 (1983) (noting that rulemaking is not arbitrary merely because an agency declines to pursue every possible alternative where it has reasonably explained its decision).

¶ 46     Second, ANAKS argues that the Board acted arbitrarily by acknowledging that certain environmental matters—noise in particular—would be subject to regulation by other agencies. We reject that argument because the SZL recognizes a multi-agency regulatory framework. Nothing in the statute requires the Zoning Board to resolve every environmental or technical issue conclusively before issuing a conditional use permit. By recognizing the role of parallel permitting and enforcement regimes, the Board did not fail to consider relevant factors or abdicate its statutory responsibility.

¶ 47     Contrary to ANAKS's characterization, the Board considered potential noise and broader compatibility impacts and addressed those concerns through express permit conditions. During the March 18 hearing, the Board approved the conditional use permit subject to additional conditions, including: (1) reducing

"the height of the commercial bay parapet to 42'2" to match the back bay"; (2) requiring Atkins Kroll to "maintain the decibel level as reported"; and (3) imposing a "$1,000 per day fine" for violation of the conditions. Appellant's App. at 533. These measures demonstrate that the Board did not ignore compatibility concerns but exercised its statutory role by approving the project subject to conditions designed to mitigate identified impacts.

¶ 48    Third, ANAKS asserts that the Board relied on non-statutory considerations, including economic development, rather than the compatibility criteria governing conditional uses. The record reflects that any discussion of economic considerations occurred when evaluating site suitability and land-use compatibility, not as a substitute for the criteria in the SZL. Unlike cases in which an agency expressly ignores mandatory statutory factors, the Board here did not disclaim or bypass the zoning standards it was required to apply. *Cf. Calvo v. N. Mar. I. Scholarship Advisory Bd.,* 2009 MP 2 ¶¶ 20, 24–29 (holding agency action arbitrary and capricious where the agency's regulations failed to implement and weigh all statutorily mandated criteria and instead relied on a different methodology than the statute required).

¶ 49    Finally, the Board imposed nineteen conditions on the permit aimed at mitigating potential impacts and addressing concerns raised during the hearings. The use of conditions is a hallmark of reasoned decision-making in conditional use permitting. That ANAKS believes the conditions were insufficient reflects disagreement with the Board's policy judgment, not arbitrariness or caprice.

¶ 50    On this record, the Board examined the relevant considerations identified in the SZL, heard and evaluated competing views, and articulated a rational basis for its decision. The approval of the conditional use permit therefore was not arbitrary or capricious within the meaning of 1 CMC § 9112(f)(2)(i).

### V. Conclusion

¶ 51    ANAKS has not established reversible error under the APA. The SZL entrusts the Zoning Board with authority to evaluate and approve conditional use permits, and nothing in that statutory framework conditions the Board's power on internal staffing qualifications. The record reflects that the Board provided notice in the manner authorized by section 1404, afforded ANAKS meaningful due process including notice and an opportunity to be heard, and conducted the public-hearing process in a way the Legislature prescribed. The Constitution's guarantee of a clean and healthful environment safeguards against governmental action that authorizes substantial and imminent environmental harm; it does not displace the zoning framework enacted by the Legislature.

¶ 52    Under the deferential standard governing judicial review of administrative decisions, the Board's approval reflects a reasoned application of the governing criteria and is supported by the record. Issuing the conditional use permit was not arbitrary, capricious, or otherwise contrary to law within the meaning of 1 CMC § 9112(f)(2)(i). The judgment of the Superior Court is AFFIRMED.

So Ordered this 13th day of March 2026.


/s/_____
ALEXANDRO C. CASTRO
Chief Justice


/s/_____
ROBERT J. TORRES, JR.
Justice Pro Temp


/s/_____
F. PHILIP CARBULLIDO
Justice Pro Temp

### COUNSEL

Kathryn B. Fuller & Colin M. Thompson, Saipan, MP, for Appellant.

J. Robert Glass, Jr., Saipan, MP, for Co-Appellee.

Rodney J. Jacob, Hagåtña, GU & Sean E. Frink, Saipan, MP for Co-Appellee.

Joey P. San Nicolas, Saipan, MP, for Co-Appellee.

### NOTICE

*This slip opinion has not been certified by the Clerk of the Supreme Court for publication in the permanent law reports. Until certified, it is subject to revision or withdrawal. In the event of any discrepancies between this slip opinion and the opinion certified for publication, the certified opinion controls. Readers are requested to bring errors to the attention of the Clerk of the Supreme Court, P.O. Box 502165 Saipan, MP 96950, phone (670) 236–9715, e-mail Supreme.Court@NMIJudiciary.gov.*

**E-FILED**
**CNMI SUPREME COURT**
E-filed: Mar 13 2026 01:35PM
Clerk Review: Mar 13 2026 01:35PM
Filing ID: 78716320
Case No.: 2024-SCC-0011-CIV
Judy  Aldan



IN THE

# Supreme Court

OF THE

# Commonwealth of the Northern Mariana Islands

---

**ANAKS OCEAN VIEW HILL SAIPAN HOMEOWNER'S ASSOCIATION, LTD.,**
*Petitioner-Appellant,*

***v.***

**PERRY INOS JR., ET AL.,**
*Respondent-Appellees,*

**AND**

**ATKINS KROLL SAIPAN, INC.,**
*Applicant-Appellee.*

---

**Supreme Court No. 2024-SCC-0011-CIV**
Superior Court No. 22-0103-CV

**JUDGMENT**

ANAKS Ocean View Hill Saipan Homeowners' Association, Ltd. appeals the Superior Court's judgment affirming the Commonwealth Zoning Board's approval of a conditional use permit. For the reasons set forth in the accompanying opinion, the judgment of the Superior Court affirming the issuance of the conditional use permit to Atkins Kroll Saipan, Inc. is AFFIRMED**.**

ENTERED this 13th day of March, 2026.


 /s/
_____
JUDY T. ALDAN
Clerk of Court